**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ahmed Khamis, | No. CV-19-05385-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review. The Court now considers Plaintiff's Opening Brief (Doc. 16, "Pl. Br."), the Defendant's Response (Doc. 17, "Def. Br."), and Plaintiff's Reply (Doc. 18, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 11, "R."). For the following reasons, the decision is affirmed.

## I.    BACKGROUND[1]

Plaintiff filed his application for benefits on August 21, 2015, alleging disability as of that same day due to various mental impairments and a heart condition.[2] (R. at 22, 28,

---

[1]    The Court has reviewed the entirety of the medical evidence.  In lieu of providing a detailed summary of it here, the Court will reference and incorporate particular evidence as appropriate in its analysis.

[2]    This appeal is limited to the ALJ's consideration of Plaintiff's mental impairments. (Pl. Br. at 8 n.4.)

248.) The application was denied at the initial and reconsideration levels, and a hearing before an administrative law judge ("ALJ") followed. (*Id.* at 22, 76–101.) The ALJ again denied Plaintiff's application, finding him not disabled on August 1, 2018.  (*Id.* at 22–35.) Therein, the ALJ found Plaintiff had "severe"[3] impairments of schizoaffective disorder, post-traumatic stress disorder, and generalized anxiety disorder. (*Id.* at 24.) Despite these impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to perform work at all exertional levels but with non-exertional limitations to unskilled work involving simple instructions, occasional contact with co-workers, no teamwork, and no contact with the public. (*Id.* at 28.) Based on this RFC assessment; Plaintiff's age, education, and work experience; and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform work as a janitorial worker and housekeeper and was therefore not disabled. (*Id.* at 34–35.)  Afterward, the Appeals Council denied review and the decision became final. (*Id.* at 1–4.)

## II.   LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court only reviews issues raised by the party challenging the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may affirm, modify, or reverse the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a

---

[3]      An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

[4]      "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1).

conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Even when the ALJ commits legal error, [the Court] uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 416.920(a). The burden of proof is on the claimant for the first four steps but shifts to the ALJ at step five. *Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1149 (citation and internal quotation marks omitted). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.*

§ 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to step five and determines whether the claimant can perform other work existing in significant numbers in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues that the ALJ improperly dismissed Plaintiff's symptom testimony, which was also supported by the record. (Pl. Br. at 21.) Second, Plaintiff challenges the ALJ's evaluation of the medical opinion evidence. (*Id.* at 13, 19.) The Court will address each argument in turn.

### A.   Plaintiff's Subjective Allegations

Plaintiff's first assignment of error is that the ALJ improperly rejected his subjective allegations regarding the severity of his impairments. (Pl. Br. at 21–24; *see* R. at 28–30.) As noted by the ALJ, Plaintiff alleged he cannot work because he is "unable to focus." (R. at 28, 257.) Plaintiff alleged and testified to issues with ADHD, memory, concentration, schizophrenia, daily auditory/visual hallucinations, paranoia, frequent nightmares, depression, anxiety, and frequent panic attacks. (*Id.* at 28, 93–98, 304.) The ALJ found the alleged severity of Plaintiff's impairments "not entirely consistent with the medical evidence and other evidence." (*Id.* at 28–30.)

In assessing a claimant's RFC, the ALJ considers a claimant's subjective allegations and first "determine[s] the extent to which [any] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the] symptoms affect [the claimant's] ability to work." 20 C.F.R. § 416.929(a); *see* 20 C.F.R. § 416.929(c)(2). Absent a finding of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting a claimant's allegations. *Treichler*, 775 F.3d at 1102.

General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). The ALJ may also consider "whether the alleged symptoms are consistent with the medical evidence."[5] *Lingenfelter*, 504 F.3d at 1040. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, Plaintiff's allegations of disabling mental symptoms were properly discounted for specific, clear, and convincing reasons supported by substantial evidence. First, the ALJ found the allegations were not consistent with notations of Plaintiff's behavioral health providers, which included his treating psychiatrist, Dr. Corey Yilmaz; nurses; and behavioral health technicians. (*Id.* at 29–30.) Specifically, the ALJ noted that mental status examinations conducted by Dr. Yilmaz and various nurses and/or nurse practitioners indicated that Plaintiff "maintained fair fund of knowledge, memory, insight, judgment[,] and concentration." (*Id.* at 30 (citing records[6]).) Additionally, the ALJ noted notations of

---

[5] "[H]owever, an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter*, 504 F.3d at 1040 n.11.

[6] R. at 30 (citing R. at 584 [nurse practitioner note, 01/11/16], 1071 [psychiatrist note, 12/10/15], 1132 [psychiatrist note, 09/29/2016], 1135 [psychiatrist note, 08/24/16], 1138 [psychiatrist note, 08/03/16], 1141 [psychiatrist note, 06/09/2016], 1307 [psychiatrist note, 07/06/17], 1315 [psychiatrist note, 06/13/17], 1328 [psychiatrist note, 05/03/2017], 1351 [psychiatrist note, 03/29/17], 1380 [psychiatrist note, 01/11/2017], 1397 [psychiatrist note, 11/23/16], 1410 [psychiatrist note, 11/03/16], 1526 [RN note, 12/27/17], 1558 [psychiatrist

"good eye contact, concentration, and intact memory" as well as "a euthymic mood and appropriate affect." (*Id.* (citing *id.* at 924).) Therefore, the ALJ did not err in discounting Plaintiff's allegations on account of a lack of corroboration from the objective medical evidence, particularly, his providers' consistent findings of "fair" mental functioning. *See Lingenfelter*, 504 F.3d at 1040.

Next, the ALJ properly discounted Plaintiff's allegations on account of the reported effectiveness of medication in reducing or eliminating his symptoms. (*Id.* at 30.) The ALJ noted Plaintiff's report that his "audio and visual hallucinations are improved with medications." (*Id.* (citing *id.* at 1020).) The record states that Plaintiff "endorse[d] audio and visual hallucinations daily with or without medica[ti]ons but state[d] that the hallucinations both visual and auditory are improved with the medications and are tolerable." (*Id.* at 1020.) However, the ALJ also noted Plaintiff's report to the consultative examining psychologist that his hallucinations stopped when he started taking olanzapine. (*Id.* at 30 (citing *id.* at 536).) And, at the hearing, when the ALJ specifically asked Plaintiff, "Do you hear voices even with the medication that you're taking? Do you still hear them?" he responded, "No." (*Id.* at 94.) Thus, Plaintiff's allegations were properly discounted on account of the reported effectiveness of medication in controlling his symptoms. *See Warre*, 439 F.3d at 1006.

Lastly, the ALJ provided other reasons for discounting Plaintiff's allegations, such as his engagement in certain daily activities. (*See id.* at 29–30.) Because the Court has found at least two legally valid reasons supported by substantial evidence for the discount of Plaintiff's allegations as explained above, it need not determine the validity of the ALJ's other reasons. Even if the Court were to find error in one or more of these remaining reasons, it would not change the outcome of the case. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding ALJ's reliance on an invalid reason to discount claimant's allegations was "harmless error" where ALJ had also relied on

---

note, 12/11/17], 1600 [psychiatrist note, 11/15/17], 1628 [registered nurse note, 10/30/17], 1638 [psychiatrist note, 09/25/17]).

reasons found valid).

        In dispute of the ALJ's findings, Plaintiff argues that "notes of stability and/or improvement[] do not negate [his] reports of ongoing symptoms despite multiple medication trials." (Pl. Br. at 23.) He further argues that "Dr. Yilmaz would not have needed to continuously discontinue, add, and increase [his] multiple psychotropic medications if [he] was stable or improved enough to allow for competitive employment."(*Id.*) However, the ALJ did not rely solely on "notes of stability and/or improvement." As discussed, the ALJ relied on objective findings made by Plaintiff's providers as well as *Plaintiff's own reports* that medications were beneficial to him. Moreover, Plaintiff's contention that he was not actually "stable" is directly belied by his providers' *consistent* notations to the contrary. (*See, e.g.*, R. at 586, 934, 1072, 1142.) Therefore, Plaintiff's arguments fail to persuade.[7]

   **B.   Medical Opinion Evidence**

        Plaintiff's second assignment of error is that the ALJ improperly rejected the opinions of his treating psychiatrist, Dr. Corey Yilmaz, and the agency's consultative

---

[7]     Plaintiff also argues that the ALJ was not permitted to consider whether medical evidence supported the alleged severity of his impairments. (Pl. Br. at 22.) This argument is without merit as the regulations plainly state that the ALJ must "determine the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the *medical signs and laboratory findings* and other evidence to decide how [his] symptoms affect [his] ability to work." 20 C.F.R. § 404.1529(a) (emphasis added). The ALJ, however, may not "reject [a claimant's] statements . . . *solely* because the available objective medical evidence does not substantiate [them]." *Id.* § 404.1529(c)(2) (emphasis added). Therefore, if the ALJ articulates other valid reasons for discounting the claimant's allegations–as he did here–it is not improper to base the discount, in part, on a lack of support from the objective medical evidence. *See Lingenfelter*, 504 F.3d at 1040; *Schott v. Comm'r of Soc. Sec. Admin.*, No. CV-19-00389-PHX-JJT, 2019 WL 5782324, at *5 (D. Ariz. Nov. 6, 2019).

        Additionally, Plaintiff argues that the ALJ erred by not "t[ying]-in the characterization of the medical record with any particular symptom testimony." (*Id.* at 22–23.) The Court finds no error. Given that the ALJ identified Plaintiff's allegations (R. at 28) and evidence undermining those allegations (*id.* at 29–30), the Court can reasonably discern the ALJ's path and meaningfully determine that the ALJ's conclusions are supported by substantial evidence. *See Treichler*, 775 F.3d at 1099.

examining psychologist, Dr. Brent Geary. (Pl. Br. at 13–21; *see* R. at 31–33.) He also argues that the ALJ could not rely on the opinions of non-examining sources who reviewed his application at the initial and reconsideration levels. (Pl. Br. at 18–19; *see* R. at 33.)

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence. 20 C.F.R. § 416.945(a)(3); *see* 20 C.F.R. § 416.927. "[P]hysicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability–the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In general, medical opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 416.927(c)(1)–(6); *Trevizo*, 871 F.3d at 675.

### 1.    Dr. Yilmaz's Opinions

First, the ALJ considered medical assessments from Dr. Yilmaz, Plaintiff's treating psychiatrist. (R. at 31; *see* R. at 541–42, 1157–58, 1443–44, 1847–48.) Dr. Yilmaz opined that Plaintiff had "moderately severe" to "severe" limitations in various areas of mental

functioning, including his abilities to relate to other people; respond appropriately to co-workers and customary work pressures; and understand, remember, and carry out instructions. (*See id.* at 541, 1157.) The ALJ assigned "little weight" to Dr. Yilmaz's assessments and noted:

> While [Dr. Yilmaz's] medical assessments are fairly consistent, they are very different and inconsistent with treatment notes from his own facility. A mental status exam dated April 11, 2016 reveals [Plaintiff] had good eye contact, concentration, and intact memory. [He] had a euthymic mood and appropriate affect. [He] had logical thought process, appropriate content, no hallucinations and good judgment, impulse control and insight. As discussed, mental status exams generally reveal [Plaintiff] maintained fair fund of knowledge, memory, insight, judgment and concentration. Further, progress notes dated October 16, 2015 to January 5, 2018 consistently indicate that [Plaintiff] has been stable. [Plaintiff's] mood was generally neutral or otherwise euthymic. In addition, progress notes dated February 19, 2019 and January 5, 2018 generally indicate that [Plaintiff] reported doing well or otherwise improved with his medication.

(*Id.* at 31.)

The Court finds no error. A lack of support from objective medical evidence and inconsistency with other evidence are legitimate bases upon which a treating source's opinion can be discounted or rejected. *See* 20 C.F.R. §§ 416.927(c)(3)–(4)[8]; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (stating that the ALJ may permissibly reject medical opinions that are "conclusory, brief, and unsupported by the record as a whole or by objective medical findings"). As previously discussed, Dr. Yilmaz made findings which were inconsistent with Plaintiff's allegations of disability. Those same findings noted by the ALJ here likewise fail to support Dr. Yilmaz's opinions of the same. Accordingly, the ALJ's assignment of "little weight" to them is supported by

---

[8]     "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion." 20 C.F.R. § 416.927(c)(3). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." *Id.* § 416.927(c)(4).

1   substantial evidence.

2       **2.   Dr. Geary's Opinion**

3       Next, the ALJ considered the opinion of the agency's consultative examining

4   psychologist, Dr. Geary, who opined to various mental limitations. (R. at 32–33; *see* R. at

5   534–40.) The ALJ assigned Dr. Geary's opinion "minimal weight," noting:

6           While Dr. Geary made some general observations concerning
        [Plaintiff's] ability in the work environment, he did not frame

7           his observations in specific work[-]related terms, mild,
        moderate, marked or extreme. For instance, he noted that

8           [Plaintiff] would require extra explanation of and reminders of
        work details but did not specify if this would limit his ability

9           to perform simple unskilled work, if at all. Further, he noted

10          that [Plaintiff] has trouble with prolonged focus and his ability
        to maintain regular attendance at president is "highly

11          questionable" but failed to provide a specific opinion as to how

12          this affects [Plaintiff's] ability to sustain concentration and
        persistence for simple unskilled work or otherwise how it

13          affects the claimant's ability to perform skilled work. The term,

14          highly questionable[,] is vague and does not provide any

15          specific insight into [Plaintiff's] ability to sustain concentration
        and persistence.

16

17  (*Id.* at 33.)

18      The Court finds legal error, but, as explained below, Plaintiff fails to show that the

19  error is harmful and that reversal on its account is therefore warranted. As noted by the

20  Commissioner, 20 C.F.R. § 416.927(c)(3)[9] permits an ALJ to consider the quality of

21  explanation a source provides in determining how much weight to give the source's

22  opinion. (Def. Br. at 15.) However, what the Court is unaware of–and the Commissioner

23  fails to cite–any law that expressly requires a source to utilize *specific words* in rendering

24  his or her opinion. Here, Dr. Geary's opinion was given lesser weight because he did not

25  use the terms, "mild, moderate, marked[,] or extreme," yet, as noted by Plaintiff, nothing

26  on the form that the agency provided him indicated that he had to use these words. (Pl. Br.

27

28      [9]     "The better an explanation a source provides for a medical opinion, the more weight
we will give that medical opinion." 20 C.F.R. § 416.927(c)(3).

at 20; *see* R. at 539.) Rather, the form simply stated:

> Please give us a statement of your medical opinion, based on your substantiated medical findings about what the individual can still do despite his or her impairment(s). Please do not indicate what the individual states he/she can do, but what YOU, in your best judgment, feel he/she can do.

(R. at 539.) It is improper for the Commissioner to reject an examiner's opinion because the examiner did not comply with the use of specific terms.[10] Also, the ALJ relied on and cited evidence that likewise did not contain express notations of "mild" or "moderate" limitations in support of his own findings of "mild" and "moderate" limitations in various areas of Plaintiff's mental functioning. (*See id.* at 27.) Thus, it is not clear that Dr. Geary's opinion needed to include these specific terms for the ALJ to extrapolate specific degrees of limitation (*e.g.*, "mild," "moderate," *etc.*) from it. If it is the policy and/or intent of the Commissioner to discount otherwise adequately explained medical opinions of consultative examiners on the basis that they do not include specific words, then a requirement or instruction to use such words should be made express to the examiners on the forms provided to them.

Although the Court finds error in the rejection of Dr. Geary's opinion, it will not reverse the decision on account of this error because Plaintiff fails to show that the error is harmful, *i.e.*, consequential to the overall nondisability determination. *See Treichler*, 775 F.3d at 1099; *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'") (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)), *superseded by regulation on other grounds*. Plaintiff asserts that "[t]he limitations assessed by Dr. Geary would make it impossible to perform any sustained work." (Pl. Br. at 19.) However, Plaintiff cites no evidence–VE testimony or otherwise–to support this assertion. And

---

[10]     The Commissioner's citation to *Ford v. Saul*, 950 F.3d 1141, 1155–56 (9th Cir. 2020) is unpersuasive. (Def. Br. at 15.) The ALJ in *Ford* rejecting an examining source's opinion for failing to provide "useful statements." *Id.* at 1156. Here, the ALJ rejected Dr. Geary's statement because he failed to use specific words.

Plaintiff is not qualified, as a lay individual, to provide an independent analysis of Dr. Geary's medical opinion, that is, decide on his own that the opined-to limitations would result in disability. Plaintiff, who was represented by counsel at his hearing, was given an opportunity to question the VE at the hearing and could have asked the VE whether Dr. Geary's opined-to limitations, in his expert opinion, precluded all gainful activity; however, he did not. (*See* R. at 100.) Thus, the rejection of Dr. Geary's opinion is harmless because it is inconsequential to the overall nondisability determination since nothing *in the record* establishes that his opined-to limitations preclude all gainful activity. *See Treichler*, 775 F.3d at 1099.

### 3.   Non-examining Reviewers

Lastly, Plaintiff argues that the ALJ could not rely on the opinions of the non-examining psychologist and psychiatrist who reviewed his application at the initial and reconsideration levels, respectively, in finding him not disabled. (Pl. Br. at 18–19; *see* R. at 33, 108–22 [initial level], 123–40 [reconsideration level].) Plaintiff's argument is without merit as the Ninth Circuit has specifically held that "[t]he opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Because their opinions were consistent with other evidence in the record noted by the ALJ (R. at 33), they could constitute substantial evidence supportive of the ALJ's nondisability finding. As such, the Court finds no error here.

## IV.   CONCLUSION

The ALJ provided sufficient reasons supported by substantial evidence for rejecting the opinions of Plaintiff's medical evidence and symptom testimony. The Court affirms the ALJ's nondisability determination.

Accordingly,

/ /

/ /

/ /

1    **IT IS ORDERED**, affirming the August 1, 2018 decision of the ALJ (R. at 19-35),

2    as upheld by the Appeals Council (R. at 1-3).

3    **IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment and

4    terminate this case.

5    Dated this 29th day of September, 2020.

6

7

8    Michael T. Liburdi

9    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28